UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH J. KELLY,

          Plaintiff,                    Case No. 2:15-cv-12326
                                        District Judge Nancy G. Edmunds
v.                                      Magistrate Judge Anthony P. Patti

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.
_____/

**RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DE 16) AND TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 14)**

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment, **DENY** Plaintiff's motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

**II.    REPORT**

Plaintiff, Elizabeth J. Kelly, brings this action under 42 U.S.C. §§ 405(g)

and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for supplemental security

income.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 14), the

Commissioner's memorandum in opposition and cross motion for summary judgment (DE 16), Plaintiff's reply (DE 17), and the administrative record (DE 12).

### A.    Background

Plaintiff protectively filed her applications for benefits on May 4, 2012, alleging that she has been disabled since June 1, 2008.  (R. at 187-192.)  At the December 16, 2013 hearing, Plaintiff amended her onset date to May 1, 2012.  (R. at 31.)  Plaintiff's application was denied and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Thomas Walters held a hearing on December 16, 2013.  (R. at 28-58.)  He subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 11-23.)   On May 6, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  ALJ Walters' decision became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

### B.    Plaintiff's Medical History

Plaintiff presented to John D. Jeter, MA, LLP, LLMSW, on May 28, 2009 for a psychological examination.  (R. at 279-283.)  Mr. Jeter described Plaintiff's speech as clear and understandable and noted that her gait was good without the use of any assistive devices.  (R. at 279.)  Plaintiff reported to him that she was independent with her activities of daily living, but that her low motivation and

fatigue decreased the quality of those activities. (R. at 280.) Plaintiff also reported a history of substance abuse, including alcohol, cannabis, and heroin, for which she underwent treatment. (R. at 281.) Upon mental status examination, Mr. Jeter described Plaintiff as responding well to instructions, needing no special assistance, cooperative, motivated, diligent, and verbally responsive. Her thoughts were logical, organized, simple, concrete, and goal-directed. Her thought process was appropriate. (R. at 281.) Mr. Jeter concluded that Plaintiff was able to understand, retain, and follow simple instructions. (R. at 282.)

Plaintiff presented to treating physician Shahzad Shaikh, M.D., on July 14, 2011. (R. at 284.) Dr. Shaikh noted that Plaintiff's hypertension was "currently stable," her depression was unchanged (which led to depressed mood, diminished interest, and fatigue), and that she was taking medication for her hyperthyroidism. (R. at 284.)

Plaintiff reported to endocrinologist Ali Orandi, M.D., on September 12, 2011, with complaints of hyperthyroidism, hypertension, and depression. (R. at 298-99.) Dr. Orandi reported a normal musculoskeletal examination and indicated that Plaintiff was alert and oriented, with normal judgment, mood, and recent and remote memory. (R. at 299.) On September 27, 2011, a thyroid ultrasound revealed an enlarged thyroid. (R. at 306.)

On May 15, 2012, Dr. Shaikh noted that Plaintiff's hypertension was stable. (R. at 358.)  Plaintiff presented for follow-up with Dr. Orandi on May 16, 2012, reporting that she had "not been on meds for a while."  (R. at 294.)  Dr. Orandi noted that Plaintiff's thyroid issues were ongoing and also noted cellulitis of her lower extremities.  (R. at 295.)  On June 15, 2012 and August 16, 2012, Dr. Orandi noted that Plaintiff was alert and oriented with normal affect, judgment, mood, and memory.  (R. at 293 and 337.)

Plaintiff followed up with Dr. Shaikh on August 23, 2012, complaining of leg discomfort and hip pain.  (R. at 361.)  Upon examination, Dr. Shaikh noted right hip tenderness and moderate pain with motion, in addition to edema in her lower extremities with no calf tenderness.  (R. at 362.)  Upon examination, Dr. Shaikh found no motor weakness and intact balance and gait.  (R. at 362-63.)  Dr. Shaikh prescribed medication for Plaintiff's cirrhosis of the liver and osteoarthritis. (R. at 363.)  A September 19, 2012 x-ray revealed moderate degenerative arthritis of the right hip. (R. at 369.)

Plaintiff underwent a consultative examination with Bharti Sachdev, M.D., on October 2, 2012.  (R. at 308-310.)  She reported pain in her back and upper back and noted that she took aspirin daily and went to Planet Fitness to do light exercises three times per week.  (R. at 308.)  She also complained of daily headaches and associated nausea.  Upon examination, Dr. Sachdev found a slightly

4

enlarged thyroid and lower extremity edema.  (R. at 309.)  Dr. Sachdeve noted that Plaintiff had a good range of motion in her neck and her ambulation was stable.  (R. at 310.)  Dr. Sachdev concluded that Plaintiff had good mobility despite her chronic lower back pain.  (R. at 310.)

Plaintiff underwent a consultative examination with Craig Brown, Ed.D., on October 3, 2012.  (R. at 313-324.)  Dr. Brown noted that Plaintiff displayed normal mental activity and thought processes.  (R. at 318-19.)  He further noted that her speech, language, attention, and concentration were good.  (R. at 322.)  The next day, State Agency reviewing physician Jerry Csokasy, Ph.D., opined that Plaintiff had moderate limitations in her ability to maintain concentration, persistence, and pace ("CPP") and indicated that she was able to perform "simple/routine tasks on a sustained basis."  (R. at 86-87.)

Plaintiff followed up with Dr. Shaikh on November 28, 2012, with complaints of severe and worsening pain in her lower back.  (R. at 355.)  Dr. Shaikh observed that Plaintiff had tender, moderate pain with motion in her cervical and lumbar spine.  (R. at 356.)  He noted that Plaintiff was "disabled to work," and prescribed a cane to improve ambulation.  (Id.)

On February 12, 2013, Plaintiff presented to nurse practitioner Theresa Nestorak, reporting depression, back pain, hyperthyroid issues, and hip pain.  (R. at 346.)  NP Nestorak noted that Plaintiff had no "unusual anxiety or evidence of

depression." (R. at 348.) Plaintiff followed up with NP Nestorak on March 26, 2013 and noted that she suffered from headaches and insomnia, but did not indicate that she had difficulty with concentration. (R. at 343.) On April 30, 2013, Plaintiff reported that she was able to complete community errands, dress herself, squat/kneel, and wash herself, but found it difficult to ascend and descend stairs, cook, and walk for ten minutes. (R. at 510.)

Plaintiff began seeing social worker Dawn Del Rio on September 30, 2013, reporting depressive symptoms including poor concentration, poor memory, and tearfulness. (R. at 521.) Ms. Del Rio diagnosed Plaintiff with major depressive disorder based on the reported symptoms. (R. at 538.) She noted, however, that Plaintiff's behavior, affect, speech, memory, perception, thoughts, and intellect were normal. (R. at 536-37.)

Plaintiff's longtime friend, Dick Gieske, submitted an affidavit on December 11, 2013. (R. at 272-73.) Mr. Gieske averred that Plaintiff had short-term memory loss, was unable to stand for long periods of time, used a cane, and had trouble ambulating.

### C.   Hearing Testimony

#### 1.   Plaintiff's Testimony

At the December 16, 2013 administrative hearing, Plaintiff testified that she completed school through the tenth grade and did not have a GED or other

vocational training.  (R. at 33 and 38.)  She has a daughter, with whom she sometimes stays, but no children under the age of eighteen living at home.  (R. at 34.)  She worked briefly at Subway as a food preparer and as a waitress.  (R. at 34-35.)  Her longest employment was as a line cook at a pizza/sub shop, where she made subs, pizzas, and dough.  (R. at 35.)

Plaintiff began having pain in her back, hip, and legs as a result of a motor vehicle crash in 1994.  (R. at 38.)  She experiences pain every day.  (R. at 39.)  She takes a non-narcotic pain medication and lies down frequently to relieve the pain.  (R. at 41 and 47.)  She has trouble going up and down stairs because of pain her back and hip.  (R. at 37.)  She also uses a four-footed cane for walking assistance.  (R. at 38.)

Plaintiff identified several other physical impairments, including Hepatitic C and cirrhosis of the liver, which cause her legs to swell and become discolored.  (R. at 40.)  She also suffers from hypothyroidism[1] and noted that her medication changes frequently.  (R. at 40-41.)  Plaintiff has been gaining weight "rapidly" due to her thyroid condition.  (R. at 36.)  The condition causes her to get hoarse in her throat, immobilizes her arms, and makes her mind race.  (R. at 41.)  Plaintiff described having involuntary movements in her legs.  (R. at 42.)  She takes medication for blood pressure and an antidepressant.  (R. at 41.)

---

[1] The transcript refers to "hypothyroidism," but Plaintiff's medical records indicate that she actually suffered from hyperthyroidism. (*See, e.g.,* R. at 284.)

Plaintiff testified to having depression that had recently become "overwhelming."  (R. at 43.)  According to Plaintiff, it is hard to motivate herself even to take a shower.  She admits that she struggled with her daughter's news that she was pregnant.  (R. at 43.)  She also expressed concerns about becoming homeless again and noted that she had some suicidal ideation in the past.  (R. at 43-44.)  She stated that she has trouble getting to places on time and becomes overwhelmed easily.  (R. at 44.)

As a result of her physical and mental impairments, Plaintiff does not help with household chores and has trouble washing her hair.  (R. at 45.)  She only sleeps for two hours at a time.  (R. at 46.)  She has problems with headaches, which are especially bad when she is off her thyroid medication.  (R. at 46-47.)  Plaintiff has pain in her hands, shoulders, and arms that cause her to drop things.  (R. at 48.)  She can sit for 30-45 minutes without standing, but can go longer if she is sitting on a couch with her legs propped up.  (R. at 39.)  She can lift less than five pounds and cannot walk an entire city block.  (R. at 49-50.)  Finally, Plaintiff testified to having trouble with alcohol in the past, but had been sober for six years.  (R. at 52.)

### 2.     Vocational Expert Testimony

Heather Benton testified as the Vocational Expert ("VE") at the administrative hearing.  (R. at 53-57.)  The VE identified Plaintiff's past relevant

8

work as kitchen helper, at the medium exertional level, and unskilled with a specific vocational preparation ("SVP") of 2.[2]  (R. at 115.) The ALJ then presented a series of hypotheticals to the VE.  In the first hypothetical, the ALJ asked the VE to determine if a hypothetical individual of Plaintiff's age, education, and vocational experience could perform a range of unskilled, light work[3] with the following limitations:

> That work would involve only simple repetitive work instructions, SVP 1 or 2.  It would not involve any overhead reaching.  It would require that temperature extremes be avoided.  No unprotected heights or moving machinery exposure would be present.  No climbing of ladders, ropes, or scaffolds but occasional climbing of ramps and stairs and occasional stoop, kneel, crouch, and bend, and twist.

(R. at 54-55.)  The VE testified that jobs existed at both the light and sedentary exertional levels.  At the light level, the hypothetical individual could perform the following unskilled jobs: hand packager, with 200,000 positions nationally; material handler, with 30,000 positions nationally; and equipment cleaner, with 40,000 positions nationally.  (R. at 55.)  At the sedentary level, the hypothetical individual could perform the following unskilled jobs: hand packager, with 20,000

---

[2] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  SSR 00-4P.

[3] Although the VE did not testify to it explicitly, a limitation to light work would preclude Plaintiff's past relevant work, which was performed at the medium exertional level.

positions nationally; material handler, with 45,000 positions nationally; and production worker, with 34,000 positions nationally.  (Id.)

The ALJ then asked the VE whether being off-task for more than 20 percent of the time would be work preclusive.  The VE answered that it would preclude competitive employment, as would missing more than two days per month on a regular basis.  (R. at 55-56.)

Finally, the ALJ asked the VE to assume that all of Plaintiff's testimony at the hearing was credible, and the VE indicated that the conditions to which Plaintiff testified would be work preclusive.  (R. at 56.)  Specifically, the VE noted that Plaintiff's low motivation level and need to elevate her legs would preclude competitive employment.

## D.  THE ADMINISTRATIVE DECISION

On January 31, 2014, the ALJ issued his decision.  (R. at 11-23.)  At Step 1 of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since May 4, 2012.  (R. at 13.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the  review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.     Is the claimant engaged in substantial gainful activity?
    2.     Does the claimant suffer from one or more severe impairments?

At Step 2, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis, obesity, Hepatitis C, cirrhosis, depression, and a history of substance abuse.  (R. at 13.)

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 14.)

Between Steps 3 and 4 of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[4] and determined that Plaintiff had the capacity to perform sedentary work:

> [E]xcept the claimant requires simple, repetitive work instructions at a Specific Vocational Preparation (SVP) Level of 1 or 2.  She must avoid occupations that involve overhead reaching and temperature extremes, and she must avoid exposure to unprotected heights and dangerous moving machinery.  The claimant cannot climb ladders,

---

3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[4] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

ropes, or scaffolds, but she can occasionally stoop, kneel, crouch, bend, twist, and climb ramps and stairs.

(R. at 15-16.)

The ALJ determined at Step 4 that Plaintiff was unable to perform her past relevant work.  (R. at 21.)

At Step 5, the ALJ concluded that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy.  (R. at 21.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.

### E.  STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

13

## F.  ANALYSIS

Plaintiff asserts three statements of error.  First, she contends that the ALJ's limitation to simple repetitive work at an SVP of 1 or 2 did not adequately account for her moderate limitations CPP in his hypothetical to the VE and corresponding RFC.  Second, she posits that the ALJ failed to assign appropriate weight to the opinion of her treating physician, Dr. Shaikh, in violation of the treating physician rule.  Finally, she argues that the ALJ committed reversible error by failing to consider the opinion of Plaintiff's friend, Dick Gieske. The Commissioner opposes Plaintiff's motion, asserting that she is entitled to a grant of summary judgment because substantial evidence supports the ALJ's conclusions.  I will address each argument in turn.

### 1.    The Hypothetical to the VE was Supported by Substantial Evidence

When, as here, an ALJ concludes that a claimant does not have the RFC to perform his or her past relevant work, the burden shifts to the Commissioner to show that Plaintiff "possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This requires the Commissioner to "make a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Howard*, 276 F.3d at 238 (internal citations omitted).

14

Such substantial evidence "may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id.* "A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform." *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 927 (E.D. Mich. 2005).

In the instant action, Plaintiff contends that the ALJ improperly relied on VE testimony that was based on an inaccurate hypothetical, namely one that did not adequately account for her "moderate to extreme difficulties in maintaining" CPP. (DE 14 at 24.) Plaintiff bases this argument on the fact that the ALJ found a moderate impairment of CPP at Step 2 of his analysis, which was consistent with the opinion of State Agency psychologist Jerry Csokasy, Ph.D., who noted that she had "moderate" difficulties in CPP. (R. at 15 and 87.) As support, Plaintiff relies on the holdings in *Green v. Comm'r of Soc. Sec.*, No. 08-11398, 2009 WL 2365557, at \*10 (E.D. Mich. July 28, 2009) and *Edwards,* 383 F. Supp. at 930. In *Green*, the court concluded that the plaintiff's moderate problems in CPP were not accounted for with a limitation to unskilled jobs. Similarly, in *Edwards*, the court concluded that a limitation to unskilled work did not account for the plaintiff's potential inability to meet quotas, stay alert, or work at a consistent pace.

15

However, as Defendant points out, this District has more recently concluded that a limitation to simple, repetitive work can be adequate to address a moderate limitation in CPP. [5]  As a preliminary matter, Plaintiff overstates the holding of *Edwards*, in which the Court concluded that in *that specific case*, the hypothetical opined by the ALJ (limiting Plaintiff to unskilled work) did not accurately reflect Plaintiff's limitations.  It was not a blanket decision indicating that moderate impairments in CPP prevent competitive employment.

Instead, the Sixth Circuit has rejected "the notion that a hypothetical question must contain talismanic language," including a recitation that Plaintiff had moderate limitations in CPP.  *Street v. Comm'r of Soc. Sec.*, 390 F. Supp. 2d 630, 638 (E.D. Mich. 2005) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)). Consistently, Courts in this district have emphasized the need for a case-by-case analysis when assessing whether a limitation to unskilled work adequately accounts for a CPP deficiency.  *Bohn-Morton v. Commissioner of Social Security*, 389 F. Supp. 2d 804, 805-07 (E.D. Mich. 2005); s*ee also Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) (noting that "[d]ecisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude

---

[5] To be clear, although Plaintiff describes her limitation as "moderate to extreme," there is no evidence in the record demonstrating an extreme limitation in CPP. Even the evidence on which Plaintiff relies to support her argument indicates only a moderate impairment. (R. at 87.)

simple, routine, unskilled work."); *McNamara v. Comm'r of Soc. Sec.*, No. CIV.A. 11-10331, 2011 WL 7025855, at *12 (E.D. Mich. Dec. 1, 2011) *report and recommendation adopted*, No. 11-10331, 2012 WL 113541 (E.D. Mich. Jan. 13, 2012) (concluding that the ALJ's hypothetical "need not incorporate a listing of the claimant's medical conditions, so long as the vocational expert's testimony . . . takes into account the claimant's functional limitations."); *Schalk v. Comm'r of Soc. Sec.*, No. 10-CV-13894, 2011 WL 4406824, at *11 (E.D. Mich. Aug. 30, 2011) *report and recommendation adopted*, No. 10-13894, 2011 WL 4406332 (E.D. Mich. Sept. 22, 2011) (concluding that there is "no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration" and holding that, instead, the "Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC.").

Here, the ALJ's first hypothetical to the VE and resulting RFC limited Plaintiff to "simple repetitive work instructions at a Specific Vocational Preparation (SVP) Level of 1 or 2." (R. at 15 and 54.) The ALJ noted that such a limitation was appropriate based on Plaintiff's "mental limitation in response to her impairments," specifically with her concentration, persistence and pace. (R. at 19.) The Undersigned concludes that the ALJ's hypothetical to the VE accurately portrayed Plaintiff's mental limitations and substantial evidence supports the

hypothetical and subsequent RFC.  First, this aspect of the RFC is supported by substantial medical evidence in the record, including the opinion of John Jeter, MA, LLP, who noted that Plaintiff was able to "understand, retain, and follow simple instructions," and could be limited to performing "simple, routine, repetitive, concrete, tangible tasks."  (R. at 282.)  Dr. Orandi consistently described Plaintiff has having normal judgment and memory, and did not recommend further limitation than that provided in the RFC.  (R. at 293, 297, 299, 337, 339.)  Dr. Brown assessed Plaintiff's attention and concentration as "good."  (R. at 322.)  Second, the RFC is consistent with Plaintiff's own self-reports.  For example, Plaintiff denied that she had difficulty concentrating to Theresa Nestorak, NP, indicating that her neuro/psychiatric issues involved only headache, insomnia, and psychiatric issues.  (R. at 343.)   In addition, as the ALJ noted, despite some memory deficits, Plaintiff reported that she retained the ability to cook, read magazines, and watch television.  (R. at 216.)

Finally, Plaintiff's brief argument that the ALJ failed to consider all of her impairments when assessing her RFC is without merit.  Plaintiff essentially argues that the ALJ failed to consider the extent of her impairments consistent with her testimony.  Indeed, the VE testified, in response to the ALJ's final hypothetical, that if Plaintiff's testimony were deemed entirely credible, she would be precluded from competitive employment.  (R. at 56.)  However, the ALJ did *not* find

18

Plaintiff's testimony to be entirely credible and did not rely on the VE's response to the final hypothetical when crafting the RFC.  Plaintiff does not challenge the ALJ's credibility finding.  (R. at 16.)  The ALJ was not required to rely on VE testimony in response to a hypothetical that is more restrictive than that opined in the RFC.  *Powers v. Comm'r of Soc. Sec.*, No. 13-01575, 2014 WL 861541, at *5 (E.D. Mich. Mar. 5, 2014).  In sum, Plaintiff has failed to demonstrate that the ALJ's hypothetical to the VE and corresponding RFC does not account for her moderate limitations in CPP.  Substantial evidence in the record supports the ALJ's hypothetical to the VE and therefore it was not in error for the ALJ to rely on the answer to the hypothetical at Step 5.

### 2.     The ALJ Did Not Err in Weighing Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(b).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  20 CFR § 404.1527(e)(2)(i).  The ALJ must, however, "consider findings and other opinions"

of State Agency medical or psychological consultants.  (Maybe cite the quotations here?)

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408.  To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[6]  *Wilson v. Comm'r*

---

[6] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id*.

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion," 20 C.F.R. § 416.927(c)(2), and  "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11–CV–11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)).

21

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir.2006) (quoting *Wilson*, 378 F.3d at 547). *See also Betty v. Comm'r of Soc. Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled."

*Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008)
(citing *Rogers*, 486 F.3d at 242).

In the instant action, Plaintiff argues that the ALJ failed to consider the
factors set forth in 20 C.F.R. § 404.1527(d) in evaluating the opinion of her
treating physician, Dr. Shaikh.  For the reasons stated below, I find that the ALJ's
opinion gives good reasons for discounting the opinion of Dr. Shaikh and that the
Commissioner has met the goal of § 1527(c).  *Francis*, 414 F.App'x at 805
(quoting *Wilson,* 378 F.3d at 547).  I also find that the opinion "'permits the
claimant and [this] reviewing court a clear understanding of the reasons for the
weight given [the] treating physician's opinion[.]'" *Francis,* 414 F.App'x at 805
(quoting *Friend*, 375 F.App'x at 550).

In his opinion, the ALJ assigned no weight to Dr. Shaikh's November 8,
2012 note that Plaintiff was "disabled to work."  (R. at 20, 356.)  Specifically, the
ALJ noted that the opinion was conclusory and did not contain objective clinical or
diagnostic findings to support the assessment.  The ALJ observed that this
statement was inconsistent with Dr. Shaikh's own reports.  Finally, because the
opinion was so vague, the ALJ pointed out that Dr. Shaikh could be referring to
Plaintiff's inability to perform her past relevant work, which was consistent with
the ALJ's opinion.

The ALJ's treatment of this opinion was not in error.  First, opinions that are merely "administrative findings that are dispositive of the case" are reserved to the Commissioner and therefore are not entitled to special significance, even when opined by a treating source.  20 C.F.R. § 404.1527(d).  Examples of such administrative findings are opinions that the claimant is disabled or unable to work.  However, the ALJ must still weigh and consider such opinions.  20 C.F.R. § 404.1527(c)(2); s*ee also Devault v. Comm'r of Soc. Sec.*, No. 14-11986, 2015 WL 556750, at *3 (E.D. Mich. Sept. 21, 2015) *amended on reconsideration for other reasons*, No. 14-11986, 2015 WL 7450399 (E.D. Mich. Nov. 24, 2015) ("The Social Security Administration must provide the weight it gives a treating source's opinion when making a disability determination.") (citing *Wilson*, 378 F.3d at 544).

Here, the ALJ explicitly considered the opinion as noted above, but rejected it as conclusory, inconsistent with Dr. Shaikh's treatment notes, and lacking in objective medical findings to support the opinion.   These are sufficient reasons for rejecting the opinion of a treating physician.  *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009) (concluding that the ALJ properly rejected a treating physician opinion that was not supported by objective medical evidence); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (the ALJ is "not bound by conclusory statements of doctor, particularly where they are unsupported by

detailed objective criteria and documentation.") (internal quotation omitted); *White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 286 (6th Cir. 2009) (an ALJ's finding that a medical opinion conflicts with other evidence in the record is sufficient to discount the opinion.).  Plaintiff has not demonstrated that the ALJ erred procedurally and substantial evidence supports his conclusion to discount Dr. Shaikh's November 8, 2012 opinion that Plaintiff was disabled.

### 3.    The ALJ Did not Err by Failing to Address the Lay Witness Statement

Plaintiff asserts that the ALJ failed to comply with S.S.R. 96-7p by failing to explicitly discussion the opinion of lay witness Dick Gieske.  Mr. Gieske is Plaintiff's friend of eight years who provided an affidavit attesting to Plaintiff's short term memory loss, inability to stand for long periods of time, need to use a cane, and inability to do household chores.  (R. at 272-73.)  Plaintiff asserts that, had the ALJ considered the opinion and given it "the credence it deserves," she would have been found to be disabled.  (DE 14 at 28.)  As a preliminary matter, asking the Court to re-weigh evidence to give it the "credence it deserves" is inconsistent with the substantial evidence standard of review.  *See VanSingel v. Comm'r of Soc. Sec.*, 26 F. App'x 488, 489 (6th Cir. 2002) ("If supported by substantial evidence, the Commissioner's decision must be affirmed, even if [the reviewing court] would have arrived at a different result.") (citing *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983)); *Mullen v. Bowen*, 800 F.2d 535,

545 (6th Cir. 1986) (concluding that "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.").

However, even without a re-weighing of the evidence, Plaintiff's argument is unavailing.  S.S.R. 96-7P provides that, in assessing a claimant's credibility, the ALJ must consider statements from "other persons about the symptoms and how they affect the individual . . . ." *Titles II & Xvi: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P (S.S.A. July 2, 1996).  However, Plaintiff does not attack the ALJ's credibility analysis and seems to assert instead that the ALJ's failure to consider her friend's statement is reversible error on its own.  To support her argument, Plaintiff relies on *Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048 (6th Cir. 1983) and *Lohr v. Comm'r of Soc. Sec.*, 559 F. Supp. 2d 784 (E.D. Mich. 2008).

In *Lashley*, the Sixth Circuit held that "perceptible weight must be given to lay testimony where, *as here*, it is *fully supported* by the reports of the treating physicians."  708 F.2d at 1054 (emphasis added).  There, four different physicians had concluded that the claimant was "totally and permanently disabled."  *Id.*  The instant case is distinguishable because medical evidence from Plaintiff's treating physicians and therapists does *not* support Mr. Gieske's statements about her mental and physical capabilities.  For example, Mr. Gieske's statement that

26

Plaintiff had short-term memory loss was inconsistent with the records of Dr. Orandi, who noted that Plaintiff's recent and remote memory was normal (R. at 293) and of Kristen Solce, BSW, LLMSW, who indicated that Plaintiff's memory was normal (R. at 536). The physical limitations expressed by Mr. Gieske are also inconsistent with the records of Plaintiff's physicians, including Plaintiff's self-report to NP Nestorak that she is able to complete community errands, drive, squat, kneel, stand from a seated position, walk household distances, and kneel. (R. at 510.) Accordingly, the ALJ was not required to explicitly assign weight to the opinion of Mr. Gieske. *See Melvin v. Sec'y of Health & Hum. Servs.*, 762 F.2d 1009, at *3 (table) (6th Cir. 1985) (concluding that the Secretary did not err in refusing to address lay witness testimony that was not supported by the medical record).

The *Lohr* holding is also distinguishable. There, the letters at issue were from individuals who had "seen the individual in their professional capacity." 559 F. Supp. 2d at 792. Here, the affidavit at issue is from a non-medical source who did not have the opportunity to see Plaintiff in a professional capacity in connection with her impairments. Pursuant to S.S.R. 06-3p, although this evidence must be *considered*, it is not an opinion to which the ALJ was required to explicitly assign weight. *See also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (An ALJ need not "articulate his [or her] reasons for crediting or

discrediting each medical opinion," so long as the factual findings demonstrate that he or she considered the opinions). Here, the factual findings demonstrate that the ALJ considered the opinion because the ALJ's ultimate RFC is largely consistent with Mr. Gieske's affidavit. For example, the ALJ limited Plaintiff to simple, repetitive work to account for any potential limitations in memory and CPP. As to Mr. Gieske's statements that Plaintiff was unable to stand for long periods of time and had difficulty cleaning up the house because of her pain, the ALJ limited her to sedentary work. Accordingly, the ALJ did not err in failing to explicitly discuss Mr. Gieske's statements.

### G.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 22, 2016        s/Anthony P. Patti
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on July 22, 2016, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti